# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 1691 | DATE | 9/12/2002 |
| CASE TITLE | DYER vs. LUMPKIN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Dyer's claims are barred by the doctrine of res judicata and are dismissed with prejudice. In light of this holding, the Court need not address whether each of Dyer's claims should be dismissed for failure to state a claim. Defendants' amended motion to dismiss plaintiff's first amended complaint is granted. Plaintiff's first amended complaint is dismissed with prejudice.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 13 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 13 |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| LG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIA A. DYER, M.D., MPH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 1691 |
| v. ) | |
| ) | Judge John W. Darrah |
| JOHN R. LUMPKIN, M.D.; GOVERNOR ) | |
| GEORGE H. RYAN; REVEREND EDWARD HAMB; ) | |
| GARY ROBINSON; MICHELLE ) | |
| GENTRY-WISEMAN; MARK SCHMIDT; ) | |
| DARREL BALMER; MICHAEL SCHWARTZ; ) | |
| DEANNA MOOL; and GEORGE A.P. MURPHY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Julia A. Dyer ("Dyer"), filed a multi-count complaint against Defendants. In August 2001, this Court dismissed Plaintiff's complaint without prejudice. Dyer filed an amended complaint, alleging that Defendants violated her constitutional rights in various ways, including her first amendment, equal protection, and due process rights, and state law claims, including breach of duty, intentional infliction of emotional distress, and defamation. In February 2002, this Court dismissed, in part, Dyer's complaint with prejudice on grounds that her claims were barred by the doctrine of *res judicata*. *Dyer v. Lumpkin*, 2002 WL 206048 (N.D. Ill. Feb. 11, 2002). In May 2002, this Court granted Plaintiff's Motion for Reconsideration and vacated its February 11, 2002 Order based on facts that were corrected by the parties. In light of at least one incorrect statement in the Defendants' Motion to Dismiss and the lack of citation to applicable facts and case law in the parties' briefs, the Court was unable to determine the merits of the remaining arguments within the Defendants' Motion to Dismiss and Plaintiff's Motion to Reconsider. *Dyer v. Lumpkin*, 2002 WL 977437 (N.D. Ill. May 10, 2002).

Accordingly, the parties were ordered to file the appropriate briefs, including proper citation to the facts and applicable case law. Defendants' Amended Motion to Dismiss is now briefed and before the Court.

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Dismissal is only warranted if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A reading of the Amended Complaint supports the following summary of the alleged conduct of the parties.

Dyer is an African American who was employed by the Illinois Department of Public Health ("IDPH") as Deputy Director of the IDPH Office of Health and Wellness. John Lumpkin ("Lumpkin") is the Director of IDPH; George H. Ryan ("Ryan") is the Governor of Illinois; Reverend Edward Hamb ("Hamb") is the Assistant to the Governor for African American Affairs; George Richards ("Richards") is the Chairman of the Illinois Civil Service Commission ("ICSC"); Bruce Finne ("Finne") is the Executive Director of the ICSC; Gary Robinson is the Deputy Director for Finance and Administration of IDPH; Michelle Gentry-Wiseman ("Wiseman") is the Chief of Staff of IDPH; Mark Schmidt ("Schmidt") is the Assistant Director; Deputy Director of the Office of Health and Wellness; Darrel Balmer is the Chief Internal Auditor of IDPH; Michael Schwartz ("Schwartz") is the Director of Central Management Services; Deanna Mool ("Mool") is the Chief Counsel of IDPH; and George Murphy is the State Police Deputy Director, Division of Internal Affairs. All of the defendants, with the exception of

the IDPH, are sued individually.

Dyer was the IDPH Medical Deputy Director from July 1994 to July 22, 1999. On July 1, 1999, Dyer was appointed to the four-year-term position of IDPH Deputy Director of the Office of Health and Wellness.

In July 1999, Lumpkin informed Dyer of two candidates for employment whom Dyer agreed to interview. After interviewing each candidate, Dyer informed Lumpkin that neither candidate possessed the skills and had no background which prepared them for work in her office. Both individuals were hired. Dyer found both individuals' work substandard, but Lumpkin kept the individuals as employees.

On October 7, 1999, Hamb, acting on Ryan's order, called Dyer to a meeting to discuss the issue of prostate cancer in Illinois. Hamb handed Dyer an "anonymous" letter that was critical of Lumpkin's conduct in ignoring Dyer's efforts to implement the unfunded prostate cancer awareness mandate and critical of Lumpkin's and his staff's harassment of Dyer's plan to implement the funded prostate and testicular cancer awareness and testing mandate. Dyer read the letter, denied writing the letter, and told Hamb that she agreed with the allegations within the letter. Hamb informed Dyer he would "handle" the issues raised in the letter and that she should not speak to anyone about the letter.

On October 21, 1999, Defendants asked Dyer to resign from her position at IDPH. Dyer refused to resign. Despite Dyer's refusal to resign, Lumpkin and Schmidt published Dyer's resignation and her replacement with Schmidt by e-mail to all IDPH offices statewide.

October 22, 1999, Dyer sent an e-mail to IDPH offices statewide informing the offices that she had not resigned. In response, she was assigned, by Lumpkin and Mool with the

3

approval of Schwartz and Ryan, to a fictional employment classification of "Administrative Leave" with pay. Lumpkin and Mool ordered Dyer to vacate her office immediately.

Also in October 1999, Dyer was alerted to the fact that the IDPH State Laboratory in Chicago was reporting the results of newborn blood screening tests too late to allow medical providers to intervene and avoid mental retardation when the presence of phenylketonuria ("PKU") was detected. Dyer investigated the problem and called a meeting that included Lumpkin, Wiseman, and Mool.

At the meeting, Dyer informed Lumpkin that his discharge of the tenured Deputy Director of the Office of Health Protection and his replacement of the discharged Deputy Director with the "acting" Assistant Director as "acting" Deputy Director contributed to the PKU problems.

Defendants initiated an alleged State Police investigation of Dyer on November 2, 1999, which was not acknowledged as received by the State Police until December 20, 1999. Ironically, also on December 20, 1999, Dyer wrote and personally delivered a letter to Governor Ryan.

On December 21, 1999, Defendants prepared the first Statement of Charges against Dyer. Dyer responded in writing to these charges. On December 22, 1999, Dyer was informed that she was suspended pending discharge. Dyer alleged that she believed that she was served with false charges and that Lumpkin, Mool, and Schwartz continued to ignore their duties.

Dyer filed a Verified Petition for Writ of Mandamus in the Circuit Court of Cook County

(Circuit Court).[1] On February 15, 2000, she filed a Second Amended Verified Petition for Writ of Mandamus ("Writ") with the Circuit Court. In the amended petition, Dyer alleged that in October 1999, Lumpkin attempted to force her to resign from her position, and Mool interrogated Dyer's staff about an anonymous letter. After Dyer refused to resign, she was placed on paid administrative leave. Later that month, Dyer requested that Lumpkin act as required by the Personnel Rules and provide a hearing. Dyer alleged that Lumpkin, Mool, and Schwartz failed to properly address her request. In her Writ, Dyer sought, in part, to be returned to her position and that Lumpkin, Mool, and Schwartz be ordered to perform their duties as required by Illinois law.

On March 8 and 9, 2000, Defendants convened pre-termination hearings to which Dyer was not invited to participate and which resulted in a second Statement of Charges received by Dyer on March 9, 2000. The charges included: (1) failing to properly supervise the distribution of funds under control, including expenses related to the Prostate and testicular Cancer Program; (2) hiring individuals without adequate staff; (3) conduct unbecoming of a state official; (4) establishing a private account under her sole control for revenues and expenses relating to the Men's Health Fair; (5) accepting an honorarium; (6) consulting outside legal counsel regarding a department matter; (7) failing to adjust spending to meet budget limits; and (8) refusing to follow directives and complete assignments from the Director and Chief of Staff. The alleged misconduct took place from May 1998 through September 1999. In her written response to the charges, Dyer included a discussion of the above PKU issue. Dyer received approved charges

---

[1] On a motion to dismiss, the court may take judicial notice of court documents which are a matter of public record. *Doherty v. City of Chicago*, 75 F.3d 318, 324 n.4 (7th Cir. 1996).

for discharge on March 20, 2000, and filed an appeal with the Civil Service Commission on March 28, 2000. A hearing on Dyer's appeal was held; at which time, Dyer was represented by counsel.

On June 9, 2000, the Circuit Court dismissed Dyer's Writ for failure to exhaust administrative remedies.

Finne, the Administrative Law Judge (ALJ) presiding over Dyer's appeal of her discharge with the Civil Service Commission, found that four of the written charges for discharge were proved and that the said proven charges warranted discharge of Dyer from her position.[2] The Civil Service Commission accepted the ALJ's decision on December 20, 2000. Dyer did not appeal the Civil Service Commission's decision.

Defendants first argue that the Court should re-address the *res judicata* argument as to the Writ because the dismissal of Dyer's Writ for failure to exhaust her administrative remedies did not involve dismissal for lack of jurisdiction. Defendants' argument was previously rejected by the Court pursuant to *James v. Mims*, 316 Ill. App. 3d 1179 (2000) and *Mandeville v. Trucano*, 225 Ill. App. 3d 505 (1992), which held that the failure to exhaust an administrative review, where required, is jurisdictional. Furthermore, in their Motion to Dismiss Dyer's Writ, Defendants specifically argued that the Writ should be dismissed because the court lacked jurisdiction, and such motion was granted by the Circuit Court. Accordingly, Defendants' argument remains without merit.

Defendants also argue that Dyer's present suit is barred by the doctrine of *res judicata*

---

[2]These facts are taken from the decision of ALJ Finne. On a motion to dismiss, the Court may take judicial notice of court documents which are a matter of public record. *Doherty v. City of Chicago*, 75 F.3d 318, 324 n.4 (7th Cir. 1996).

6

because this Court is bound by the facts as found by the Civil Service Commission pursuant to *University of Tennessee v. Elliot*, 478 U.S. 788 (1986). Dyer responds to Defendants' argument, contending that she has no interest in relitigating the charges before the Civil Service Commission. Both parties incorrectly combine the issue of collateral estoppel and *res judicata* in the same argument.

"[A] distinction must be made between *res judicata* and collateral estoppel." *Miller v. Runyon*, 77 F.3d 189, 194 (7th Cir. 1996) (*Miller*). *Res judicata* precludes the relitigation of entire claims, while collateral estoppel precludes the relitigation of specific issues. *Miller*, 77 F.3d at 194. Furthermore, *res judicata* extends not only to issues that were actually decided but also to all grounds of recovery and defenses which could have been presented in the prior litigation between the parties. *See Lolling v. Patterson*, 966 F.2d 230, 235 (7th Cir. 1992) (*Lolling*). Because Defendants seek to dismiss Dyer's Amended Complaint based on claims and defenses that she could have previously presented to the administrative agency, the Court will address the parties' argument under the doctrine of *res judicata*.

The doctrine of *res judicata* applies to decisions of administrative agencies. *See Schofield v. Nikkel*, 314 Ill. App. 3d 771, 780 (2000); *Riverdale Indus., Inc. v. Malloy*, 307 Ill. App. 3d 183, 185 (1999) (*Riverdale*). In Illinois, *res judicata* bars relitigation of claims that could have been or were asserted in an earlier proceeding. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998) (*River Park*). A claim is precluded if it shares three elements with an earlier action: (1) an identity of parties or their privies, (2) a final judgment on the merits, and (3) an identity of the causes of action. *River Park*, 184 Ill. 2d at 302.

Regarding the identity of parties or their privies, the parties do not have to be identical.

*Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 318 (1995) (*Schnitzer*). The requirement is met where the litigants' interests are sufficiently similar; as such, they may differ in name or number. *Schnitzer*, 274 Ill. App. 3d at 318. Privity exists between two parties who adequately represent the same legal interests. "It is the identity of the interest that controls in determining privity, not the nominal identity of the parties." *Schnitzer*, 274 Ill. App. 3d at 326.

All of the alleged wrongful conduct by the Defendants in the present case took place prior to the decision of the Civil Service Commission, of which Dyer did not appeal, and all of the conduct is in relation to Dyer's alleged improper removal from her position at IDPH by state employees. Accordingly, all of the Defendants in the present action had interests that are sufficiently similar to establish an identity of the parties. *See Schnitzer*, 274 Ill. App. 3d at 318.

As to the finality of the decision, an unappealed decision of the Civil Service Commission constitutes a final judgment on the merits. *See Riverdale*, 307 Ill. App. 3d at 185. Dyer had thirty-five days to appeal the decision of the Civil Service Commission. 735 ILCS 5/3-103. Dyer chose not to take such appeal; instead, she filed the present suit. Thus, the unappealled decision of the Civil Service Commission constitutes a final judgment of Dyer's claims on the merits. *See Schofield v. Nukkel*, 314 Ill. App. 3d 771, 780 (2000); *Riverdale*, 307 Ill. App. 3d at 185; *see also King v. Ryan*, 153 Ill. 2d 449 (1992) (circuit court does not have jurisdiction to review final administrative decision after thirty-five days from the date a copy of the decision is served upon the party).

Lastly, Illinois applies the "transactional test" when determining whether claims are part of the same transaction. *River Park*, 184 Ill. 2d at 310. Under this test, claims are identical "if they arise from a single group of operative facts, regardless of whether they assert different

8

theories of relief." *River Park*, 184 Ill. 2d at 311. Claims are considered part of the same cause of action as long as they arise from the same transaction. *River Park*, 184 Ill. 2d at 311.

Dyer's present action and the administrative agency proceedings arose from the same set of operative facts, and the validity of Dyer's discharge is crucial to each. All of the alleged misconduct by the Defendants occurred prior to Dyer's responses to the charges against her, prior to the finding that four of the written charges for discharge were proved and that the said proven charges warranted discharge of Dyer from her position, prior to the appeal to the Civil Service Commission and its acceptance of the findings, and prior to the time that Dyer had to appeal the Civil Service Commission's decision. Furthermore, the alleged misconduct by Dyer occurred during the same time period of the alleged misconduct of the present Defendants. While Dyer was "careful not to raise any constitutional or civil rights claims" during the previous proceedings, she could have raised such issues in her response and appeal to the Civil Service Commission, as well as in an appeal to the circuit court had she chose to take such an appeal. *See Welch v. Johnson*, 907 F.2d 714, 723-24 (7th Cir. 1990) (*res judicata* barred plaintiff's claims because plaintiff could have raised harassment and discrimination claims before the Civil Service Commission); *Lee v. City of Peoria*, 685 F.2d 196, 200 (7th Cir. 1982) (*Lee*) (plaintiff could have brought racial discrimination claim as a defense during termination proceedings); *Durgins v. City of St. Louis*, 272 F.3d 841, 843 (7th Cir. 2001) (plaintiff could have brought 42 U.S.C. § 1983 claim with administrative-review action).

In the instant suit, Dyer seeks not only lost wages and punitive damages but also reinstatement to her previous position. If she were successful in establishing that she was discharged in violation of 42 U.S.C. §§ 1981, 1983, or 1985, it would directly undermine the

validity of the agency's decision and the state's right to discharge her. "Affording [Dyer] another opportunity to attack the validity of [her] discharge would do nothing to serve the policies behind either *res judicata* or the civil rights statutes." *Lee*, 685 F.2d at 201.

Based on the above, Dyer's claims are barred by the doctrine of *res judicata* and are dismissed with prejudice. In light of this holding, the Court need not address whether each of Dyer's claims should be dismissed for failure to state a claim. Defendants' Amended Motion to Dismiss Plaintiff's First Amended Complaint is granted. Plaintiff's First Amended Complaint is dismissed with prejudice.

Dated: September 12, 2002

JOHN W. DARRAH
United States District Judge